THOMAS P. O'BRIEN
United States Attorney
ROBB C. ADKINS
Assistant United States Attorney
Chief, Southern Division
MANI DABIRI
Assistant United States Attorney
California Bar Number: 241696
     8000 United States Courthouse
     411 West Fourth Street
     Santa Ana, California 92701
     Telephone: (714) 338-3540
     Facsimile: (714) 338-3708
     E-mail:    Mani.Dabiri@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CR No. 08-397-FMC |
|---|---|
| Plaintiff, | ) <u>GOVERNMENT'S MOTION IN LIMINE</u> <u>NO. 2 TO ADMIT EVIDENCE OF</u> |
| v. | ) <u>OTHER ACTS UNDER RULE 404(b)</u> |
| GARY WEISBERG, | ) **HEARING DATE: January 26, 2009** |
| Defendant. | ) **HEARING TIME: 1:30 p.m.** |

The United States hereby moves the Court, pursuant to Rule 404(b) of the Federal Rules of Evidence, to allow evidence of defendant's other acts that are relevant to show his intent, preparation, and modus operandi.  During a post-arrest interview, defendant admitted to corresponding with "probably more than ten" underage girls over the Internet, and of those, he admitted to talking to "probably more than a few of them" about kissing and having sex.  Furthermore, the government has produced transcripts of three online chats that defendant had in 2006 and 2007 with federal agents posing as 13- and 14-year-old girls.  These chats,

along with defendant's post-arrest admissions, are admissible under Rule 404(b) because they are relevant to show defendant's intent, preparation, and modus operandi in talking to Megan and to rebut any potential defense regarding intent.

## I.   STATEMENT OF FACTS

On September 4, 2007, defendant Gary Weisberg initiated an online correspondence with a 13-year-old girl named Megan.  His intention was clear from the beginning:  In the initial online chat, defendant immediately steered the conversation toward sex and suggested meeting in person, even as he acknowledged that a relationship with a 13-year-old girl would be illegal.  Over a total of 26 online chats and a number of back-and-forth emails, he regularly spoke to Megan about sex and the possibility of meeting in person to have sex.  These efforts culminated in a plan to meet at Megan's home on March 28, 2008, after her mother had left to go to work.  Unbeknownst to defendant, however, Megan was in fact Special Agent Marc Botello of the Federal Bureau of Investigation.  On the morning of March 28, defendant drove to Megan's apartment, parked his car, and stood outside her apartment at a pre-arranged meeting location.  He was arrested there waiting to meet Megan.

After his arrest, defendant waived his constitutional rights and agreed to be questioned.  Among other things, he admitted that he had corresponded with "probably more than ten" underage girls over the Internet, and of those, he admitted to talking to "probably more than a few of them" about kissing and having sex.

1    Further investigation revealed that Special Agent Botello
2 was not the only undercover federal agent with whom defendant had
3 chatted.  Three times in 2006 and 2007, defendant initiated chats
4 with agents posing as underage girls.  (The transcripts of these
5 chats are attached as Exhibits 1, 2, and 3).
6    In October 2006, defendant initiated a chat with Ali, a
7 15-year-old girl from Pennsylvania, in a chatroom called
8 "iloveoldermen."  The very first thing he said to her after they
9 exchanged greetings was, "15 is young...you're into older men?"
10 He then remarked, "daughters friends flirt all the time drives me
11 nuts," before adding, "its torture."
12    Defendant then began flirting with Ali, asking her if she
13 was "hot" and, upon viewing her photo, telling her that her face
14 was "super cute."  He repeatedly inquired about her interest in
15 older men ("you been with older men for real?") ("so you have
16 thoughts about being with guys my age?"), and when she expressed
17 interest in the idea, he not only encouraged her ("thats so hot")
18 but indicated he was interested in more than just talk ("are you
19 thinking about making your fantasy really happen?").  He then
20 offered to help make her fantasy a reality: "visit LA....I'll be
21 waiting, get us a room...."
22    As the chat progressed, defendant's remarks became more
23 explicit, even after he learned that Ali was 14, not 15.  He
24 asked her if she was touching herself, and whether she was "wet,"
25 and he said he wanted to "taste" her.  He asked her if she
26 dressed "slutty" and told her he was "kinda gettin hard thinking
27
28                                  3

about it." He told her he would like to dress her in sexy clothes, and he described the kind of adult clothes -- "stretch mini, pumps, sheer top, black satin panties" -- with which he would like to outfit her.

Defendant acknowledged that his intentions were "illegal" and "taboo" but told Ali he could not resist her ("i think i prob couldnt resist you if you were around, we'd be helping each other out with outr [sic] fantasys and crossing a lot of lines we shouldnt."). Before signing off, he asked her to address him as "daddy" ("say by daddy"). The chat lasted nearly fifty minutes.

In November 2006, defendant initiated a chat with Nicole, a 13-year-old girl from Connecticut, in a chatroom called "ilovemucholdermen." Despite learning her age, he asked Nicole if she liked older men and what she looked like, before he logged off to take a call from work.

Finally, in July 2007, defendant initiated a chat with a 14-year-old girl named Becca. He immediately inquired if she liked older men, and advised her that his "daugterd [sic] friends flirt a lot, making me think about it a lot." He asked Becca for her height and weight, and when she told him she was 5'0" and 94 pounds, he said, "love petite thats hot."

**II.  DEFENDANT'S ADMISSIONS REGARDING HIS ILLICIT CHATS WITH UNDERAGE GIRLS, AND THE CHATS THEMSELVES, ARE RELEVANT TO SHOW HIS INTENT, PREPARATION, AND MODUS OPERANDI.**

Rule 404(b) is a rule of inclusion -- not exclusion -- under which evidence of a defendant's "other acts" is admissible when offered to prove intent, preparation, knowledge, or some other

4

relevant purpose other than mere propensity or proclivity based on character.  Fed. R. Evid. 404(b); United States v. Curtin, 489 F.3d 935, 944-45 (9th Cir. 2007) (en banc).  Such evidence is especially relevant when a defendant's intent is a disputed issue.  Curtin, 489 F.3d at 944-45 (quoting Huddleston v. United States, 485 U.S. 681, 685 (1988)); id. at 952.

The Ninth Circuit has held that evidence is admissible under Rule 404(b) if (1) it tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.  United States v. Cherer, 513 F.3d 1150, 1157 (9th Cir. 2008) (affirming the district court's admitting 404(b) evidence in a § 2422(b) case).  If the evidence satisfies Rule 404(b), the court must then decide whether its probative value is substantially outweighed by its prejudicial impact.  Id.

In this case, defendant's admissions about talking to other underage girls about sex, as well as his three online chats with underage girls other than Megan, are relevant to show his intent in corresponding with Megan as well as his preparation and modus operandi.  The fact that he admitted, without qualification, that he had discussed kissing and sex with other underage girls is relevant to show that his intent was not to fantasize or role-play but to groom a suitable young girl for sex.  The fact that he asked Ali whether she was "thinking about making [her] fantasy really happen" also tends to prove this point.  The fact that he

1  described his desire to dress 14-year-old Ali in adult lingerie
2  -- including a stretch mini, pumps, sheer top, and black satin
3  panties -- proves that he was interested not in meeting grown
4  women who wished to be treated like children but in sexualizing
5  actual children to meet his needs.  And finally, the fact that he
6  used sexually graphic language with Ali -- asking her if she was
7  "wet" or whether she liked to dress "slutty" -- negates an intent
8  to offer Megan benevolent guidance and mentoring.
9       In all, these "other acts" are highly probative of the key
10 material point at issue in this case, which is defendant's
11 intent.  They are not remote in time, they are identical to the
12 acts that form the basis of the crime charged, and there is no
13 question that defendant made the admissions or engaged in the
14 chats.  The chats, moreover, are relevant evidence of defendant's
15 preparation because they show he used the same modus operandi to
16 inject sex into his conversation with Megan -- claiming that his
17 daughter's friends flirt with him -- that he did with Ali and
18 Becca.  The probative value of this evidence is not substantially
19 outweighed by any risk of unfair prejudice, especially since
20 defendant's intent will be the key issue at trial.  Therefore,
21 the evidence should be admitted.
22 ///
23 ///

6

**III. CONCLUSION**

For the foregoing reasons, the Court should admit evidence of defendant's post-arrest admissions regarding his chats with other underage girls, and of three of those chats themselves, as relevant to show his intent, preparation, and modus operandi.

Respectfully submitted,

January 5, 2009  
DATE

/s/  
MANI DABIRI  
Assistant United States Attorney

Attorney for Plaintiff  
United States of America

7

## DECLARATION OF MANI DABIRI

I, Mani Dabiri, declare and state as follows:

1. I am an Assistant United States Attorney with the United States Attorney's Office in the Central District of California. I am the prosecutor assigned to the matter of <u>United States v. Gary Weisberg</u>, Case No. CR 08-397-FMC. I make this declaration in support of the Government's Motion in Limine to Admit Evidence of Other Acts Under Rule 404(b).

2. Attached hereto as Exhibit 1 is a true and correct copy of the transcript or log from the online chat between defendant and Ali as well as the relevant FBI Form 302.

3. Attached hereto as Exhibit 2 is a true and correct copy of the transcript or log from the online chat between defendant and Nicole as well as the relevant FBI Form 302.

4. Attached hereto as Exhibit 3 is a true and correct copy of the transcript or log from the online chat between defendant and Becca as well as the relevant FBI Form 302.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of January, 2009 in Santa Ana, California.

```
           /s/
    MANI DABIRI
    Assistant United States Attorney
```

8